IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN BUILDERS INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>KEYSTONE INSURERS GROUP, INC.,<br><br>    Defendant-Cross Claimant-Cross Defendant,<br><br>    v.<br><br>EBENSBURG INSURANCE AGENCY,<br><br>    Defendant-Cross Claimant-Cross Defendant-Third Party Plaintiff,<br><br>    v.<br><br>CUSTOM INSTALLATIONS & CONTRACTING SERVICES<br><br>    Third Party Defendant. | No. 4:19-CV-01497<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**DECEMBER 23, 2021**

## I.   BACKGROUND

In June 2019, American Builders Insurance Company ("American Builders") commenced this civil action against Defendants Keystone Insurers Group, Inc., and

Ebensburg Insurance Agency ("EIA") alleging breach of contract, professional negligence, negligent misrepresentation, and fraudulent misrepresentation related to a workers compensation insurance policy issued to Custom Installations & Contracting Services ("Custom Installations").[1] On February 20, 2020, EIA filed a third-party complaint against Custom Installations.[2]

In the third party complaint, EIA alleges that, as part of the workers compensation insurance policy application that EIA submitted to Plaintiff, Custom Installations was required to provide certain information.[3] Specifically, Custom Installations was asked whether it performed any work underground or above 15 feet in the air; Custom Installations answered in the negative, and asserted that it performed work no higher than 15 feet in the air.[4] EIA alleges that it submitted the insurance application to Plaintiff, but all factual statements contained therein were provided by Custom Installations.[5] EIA further asserts that Custom Installations "is solely liable to the Plaintiff with respect to the alleged negligent misrepresentations and fraudulent misrepresentations in question, and as set forth in the Plaintiffs Complaint, inasmuch as such representations were both made and verified by Custom Installations . . . in the insurance application materials referred to in the

---

[1] Doc. 1.
[2] Doc. 22.
[3] *Id.* at 4.
[4] *Id.* at 5.
[5] *Id.* at 5-6.

2

pleadings."[6] Alternatively, EIA contends that Customs Installations is jointly and severally liable, or is liable for contribution or indemnity.[7]

On June 16, 2020, the third-party complaint was served on Custom Installations through its president, Michelle Nagle.[8] To date, Custom Installations has failed to answer or otherwise respond to the third-party complaint. On February 16, 2021, EIA filed a motion for default judgment against Custom Installations, but that motion was denied because EIA failed to first obtain an entry of default.[9]

In June 2021, EIA again filed for default judgment,[10] arguing that default judgment is warranted because Custom Installations has failed to respond to the third-party complaint, and because the relevant factors weigh in favor of entering default judgment.[11] Custom Installations has not responded to the motion, but American Builders has filed a brief in opposition to the motion for default judgment "in so far as it seeks an order declaring that the facts alleged by [EIA] in its Third-Party Complaint against Custom Installations are deemed true for purposes of the claims asserted by American [Builders] against [EIA] and Keystone."[12] American Builders argues that default judgment should be deferred until the matter is resolved

---

[6]   *Id.* at 6.
[7]   *Id.* at 6-7.
[8]   Doc. 42.
[9]   Docs. 59, 68.
[10]  Prior thereto EIA obtained a Clerk's entry of default against Custom Installations. Docs. 69, 70.
[11]  Doc. 71; *see* Doc. 71-1 at 6-10.
[12]  Doc. 73-1 at 1.

on its merits as to American Builders' claims against Keystone and EIA to avoid inconsistent determinations with regard to liability.[13] Reply and sur-reply briefs have been filed, and the motion is now ripe for disposition.[14] For the following reasons, the motion will be denied without prejudice.

## II.   DISCUSSION

Federal Rule of Civil Procedure 55 allows a district court to enter default judgment upon application by a party.[15] "Generally, the entry of a default judgment is disfavored, and a court is required to exercise sound judicial discretion in deciding whether to enter default judgment."[16] "This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a)."[17]

"Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."[18] "But when a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided; entry of default judgment is

---

[13] *Id.* at 3-6.
[14] Docs. 76, 84.
[15] Fed. R. Civ. P. 55(b)(2).
[16] *Kibbie v. BP/Citibank*, No. 3:08-CV-01804, 2010 WL 2573845 at *2 (M.D. Pa. June 23, 2010).
[17] 10A Charles Alan Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2685 (Apr. 2020 Update).
[18] *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

4

typically appropriate in such circumstances at least until the defendant comes forward with a motion to set aside the default judgment under Rule 55(c)."[19] In cases where the defendants fail to appear, courts may enter default judgment "based solely on the fact that the default has occurred."[20]

Although the entry of default judgment is rather straightforward in single-defendant cases, the decision of whether to grant default judgment becomes more difficult in multi-defendant cases where some, but not all, defendants have defaulted. In such circumstances, courts should exercise great caution and, if the moving party seeks default judgment against "only one defendant in a multi-defendant case, the preferred practice is for the court to withhold granting default judgment until the action is resolved on its merits against non-defaulting defendants: if plaintiff loses on the merits, the complaint should then be dismissed against both defaulting and non-defaulting defendants."[21] "To avoid potential absurdities that could result from inconsistent judgments, this practice is strictly applied where the liability is joint and several."[22]

---

[19] *Deutsche Bank Nat. Trust Co. v. Strunz*, 2013 WL 122644 at *1 (M.D. Pa. Jan. 9, 2013).
[20] *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n. 9 (3d Cir. 1990).
[21] *Alpine Fresh, Inc. v. Jala Trucking Corp.*, 181 F. Supp. 3d 250, 258 (D.N.J. 2016) (brackets and internal quotation marks omitted).
[22] *Id. See also Farzetta v. Turner & Newall, Ltd.*, 797 F.2d 151, 154 (3d Cir. 1986) (explaining that "if at trial facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining a judgment against the latter defendant, even though it failed to participate in the proceeding in which the exculpatory facts were proved").

Here, the parties dispute whether EIA and Custom Installations may, as a matter of law, be joint tortfeasors, such that the entry of default judgment would be inappropriate.[23] EIA argues that it is the agent for Custom Installations and, accordingly, Custom Installations is solely responsible for any misrepresentations made by EIA in its role as an agent.[24] Moreover, EIA asserts that, as a matter of law, "agents and principles are not joint tortfeasors."[25]

American Builders responds that, in determining whether agents and principals may be joint tortfeasors, Pennsylvania law distinguishes between vicarious liability and liability premised on each actor's own conduct; in the former, the two may not be joint tortfeasors, whereas in the latter they may be joint tortfeasors.[26] American Builders argues that EIA's claims against Custom Installations are based solely on allegations of Custom Installations' independently actionable conduct in providing false information, and is not premised on a theory that Custom Installations is vicariously liable for EIA's tortious conduct.[27] Because EIA's claims are not based on vicarious liability, American Builders argues that Custom Installations and EIA may be joint tortfeasors.[28]

---

[23] *Compare* Doc. 76 at 4-6 *with* Doc. 73-1 at 4-6 and Doc. 84 at 2-6.
[24] Doc. 76 at 4-5.
[25] *Id.* at 5; *see id.* at 5-6.
[26] Doc. 84 at 2-3.
[27] *Id.* at 4-5.
[28] *Id.* at 5-6.

In *Mamalis v. Atlas Van Lines, Inc.*, the Supreme Court of Pennsylvania assessed whether the release of a claim against an agent discharged any liability on the part of the principal.[29] The court agreed with the lower court's summation of the distinction between vicarious liability and liability imposed upon joint tortfeasors, stating:

> The rules of vicarious liability respond to a specific need in the law of torts: how to fully compensate an injury caused by the act of a single tortfeasor . . . The system of contribution among joint tortfeasors . . . has arisen completely apart from the system of vicarious liability and indemnity and meets an entirely distinct problem: how to compensate an injury inflicted by the acts of more than one tortfeasor. Unlike the liability of a principal, the liability of a joint tortfeasor is direct (because the tortfeasor actually contributed to the plaintiff's injury) and divisible (since the conduct of at least one other also contributed to the injury).[30]

That summation of the law led the Pennsylvania Supreme Court to hold

> *that absent any showing of an affirmative act, or failure to act when required to do so, by the principal*, termination of the claim against the agent extinguishes the derivative claim against the principal. A claim of vicarious liability is inseparable from the claim against the agent since any cause of action is based on the acts of only one tortfeasor.[31]

Because "[t]here was no evidence introduced to establish acts of the principal that would make [its] liability anything other than vicarious," the court concluded that the release of a claim against the agent discharged any liability on the part of the principal.[32] As the Pennsylvania Supreme Court later noted, that decision "sharply

---

[29] 560 A.2d 1380, 1381 (Pa. 1989).
[30] *Id.* at 1383.
[31] *Id.* (emphasis added).
[32] *Id.* at 1383-84.

distinguished contribution among joint tortfeasors from the system of vicarious liability and indemnity."[33]

That holding makes clear that agents and principals may be joint tortfeasors where their liability is premised on their own individual actions, rather than vicarious liability. Here, EIA asserts in its third-party complaint that Custom Installations made the relevant misrepresentations to American Builders, and that it is solely responsible for those misrepresentations.[34] This is so, EIA contends, because "*such representations were both made and verified by Custom Installations . . . to the Plaintiff and to [EIA] in the insurance application materials referred to in the pleadings.*"[35] Because EIA's allegations include "acts of the principal that would make [its] liability" direct, rather than vicarious,[36] the Court rejects EIA's assertion that EIA and Custom Installations may not, as a matter of law, be joint tortfeasors.

Finally, the Court notes that EIA contends—in a rather undeveloped and conclusory argument—that American Builders should be judicially estopped from arguing that EIA and Custom Installations are joint tortfeasors, because it has argued in other proceedings that Custom Installations is solely responsible for the misrepresentations.[37] The United States Court of Appeals for the Third Circuit has instructed that:

---

[33] *Maloney v. Valley Med. Facilities, Inc.*, 984 A.2d 478, 485 (Pa. 2009).
[34] Doc. 22 at 5-6.
[35] *Id.* at 6 (emphasis added).
[36] *Mamalis*, 560 A.2d at 1383-84.
[37] Doc. 76 at 12-13.

> Three requirements must be met before a district court may properly apply judicial estoppel. First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position in bad faith—i.e., with intent to play fast and loose with the court. Finally, a district court may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.[38]

EIA's assertion of judicial estoppel fails because, even assuming that American Builders' position in this case is "irreconcilably inconsistent" with its position in two other matters, there is no indication that American Builders changed its position in bad faith. To the contrary, American Builders asserts that its claims here arose from information "learned through discovery in the Western District litigation and the workers' compensation proceeding, which alerted American to Ebensburg's role in the submission of false information to American [Builders]."[39] Given the assertion—which at the moment remains unrefuted—that the other cases provided additional knowledge to which American Builders was not privy at the commencement of the other cases, the Court cannot conclude at this time that, if American Builders changed its position, it did so in bad faith such that judicial estoppel may appropriately be applied to prevent American Builders from asserting that EIA and Custom Installations are joint tortfeasors.

---

[38] *Montrose Med. Grp. Participating Sav. Plan v. Bulger,* 243 F.3d 773, 779-80 (3d Cir. 2001) (internal citations and quotation marks omitted).

[39] Doc. 84 at 7-8.

Because American Builders is not, as a matter of law, prevented from asserting that EIA and Custom Installations are joint tortfeasors, the Court finds it appropriate "to withhold granting default judgment until the action is resolved on its merits against non-defaulting defendants."[40] Accordingly, "the Court will deny [EIA's] motion without prejudice to the right of [EIA] to renew its motion after [American Builders'] claims have been resolved against" Defendants.[41]

## III. CONCLUSION

For the foregoing reasons, the Court concludes that the entry of default judgment against Custom Installations is not appropriate at this time. Consequently, EIA's motion for default judgment will be denied without prejudice.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[40] *Alpine Fresh, Inc.*, 181 F. Supp. 3d at 258.
[41] *J & J Sports Prods., Inc. v. Archie*, No. 1:17-CV-00745, 2019 WL 1125876, at *3 (M.D. Pa. Mar. 12, 2019) (internal quotation marks omitted).